IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOEL HUGHES, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:21-cv-1018 (RDA/IDD) |
| | ) | |
| NVR, INC., *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| LORI JENKINS, on behalf of herself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NVR, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Plaintiffs Joel Hughes and Lori Jenkins' ("Plaintiffs") Motion for Conditional Certification (Dkt. 46), Defendants NVR, Inc. ("NVR") and NVR Mortgage Finance, Inc.'s ("NVRM" and together with NVR, "Defendants") Partial Motion for Summary Judgment as to four *Hughes* Plaintiffs (Dkt. 56), and Defendants' Motion for Leave to file a Supplemental Opposition to Plaintiffs' Motion for Conditional Certification (Dkt. 66). This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition.

Considering Plaintiffs' Motion for Conditional Certification (Dkt. 46), Plaintiffs' Supporting Memorandum (Dkt. 47), Defendants' Opposition (Dkt. 58), and Plaintiffs' Reply (Dkt. 61), as well as Defendants' Partial Motion for Summary Judgment as to four *Hughes* Plaintiffs (Dkt. 56), Plaintiffs' Opposition (Dkt. 63), and Defendants' Reply (Dkt. 64), and Defendants' Motion for Leave to File a Supplemental Opposition to Plaintiffs' Motion for Conditional Certification (Dkt. 66) and Plaintiffs' Opposition (Dkt. 70), it is hereby ORDERED that Plaintiffs' Motion for Conditional Certification (Dkt. 46) IS DENIED, and it is FURTHER ORDERED that Defendants' Partial Motion for Summary Judgment as to four *Hughes* Plaintiffs (Dkt. 56) is DENIED, and it is FURTHER ORDERED that Defendants' Motion for Leave to file a Supplemental Opposition to Plaintiffs' Motion for Conditional Certification (Dkt. 66) is DENIED.

## I. BACKGROUND

For purposes of this Court's review, this Court addresses the facts as they are relevant to the Motion for Conditional Certification and then those undisputed facts relevant to Defendants' Partial Motion for Summary Judgment.

### A. Factual Background[1]

Defendants, NVR and NVRM, are a homebuilder and mortgage company, respectively. Dkt. 47 at 5. They employ loan processors ("LPs") and loan officers ("LOs") in their mortgage banking operations at 25 locations across 13 states. *Id.* The *Hughes* Plaintiffs are LPs employed by Defendants, while the *Jenkins* Plaintiffs are LOs employed by Defendants. *Id.* at 5-6.

---

[1] For purposes of evaluating Plaintiffs' motion for conditional certification, the Court only evaluates whether Plaintiffs have made the "modest factual showing" necessary under the relevant legal standard. *Chapman v. Saber Healthcare Grp., LLC*, --- F. Supp. 3d ---, No. 2:20-cv-106, 2022 WL 3686477, at *3 (E.D. Va. Aug. 25, 2022). Accordingly, the Court examines the facts as presented by Plaintiffs' motion to determine whether they can make that showing.

LPs and LOs talk to potential home buyers to collect information for home loans, gather relevant documents, and process loan paperwork for approval. *Id.* at 8. LPs and LOs do the same work at each of Defendants' locations around the country. *Id.* Some LPs and LOs work from home and others work from Defendants' on-site locations. *Id.* at 9. All LPs and LOs are classified as non-exempt, overtime-eligible employees. *Id.*

LPs and LOs are subject to Defendants' written overtime policy, known as the "Wage Payment Policy." *Id.* Under that policy, employees must seek pre-approval for overtime hours. *Id.* The policy also provides that all LPs and LOs must record all hours worked, and are subject to discipline for working overtime hours that are not pre-approved. *Id.* at 10.

The thrust of Plaintiffs' claims against Defendants is that they are subject to an unwritten overtime policy that conflicts with the Wage Payment Policy. Specifically, Plaintiffs allege that "Defendants maintain a work environment resulting in a *de facto* policy requiring LPs and LOs to work overtime off-the-clock." *Id.* at 10. LPs and LOs are full-time employees who must work a minimum 40-hour workweek. *Id.* According to Plaintiffs, the "nature of the job and Defendants' performance expectations routinely require LPs and LOs to work overtime," meaning that they often work more than 40 hours a week. *Id.* at 10-11. For example, LPs and LOs must contact home buyers in the evening to collect information and documents, resulting in work from home. *Id.* at 11.

Plaintiffs claim that Defendants rarely grant pre-approval for overtime work even though LPs and LOs must work overtime to meet the expectations of the job. *Id.* at 12. In addition, Plaintiffs contend that Defendants' managers "led LPs and LOs to believe they would be reprimanded or disciplined" if they recorded overtime hours that were not pre-approved. *Id.*

According to Plaintiffs, Defendants knew that LPs and LOs had to work "off-the-clock" to get their work done. *Id.* at 14. For example, managers would communicate with LPs and LOs for work purposes after hours and on weekends. *Id.* Plaintiffs also claim that Defendants knew about unpaid overtime because many LPs and LOs complained to their managers and executives about their extra work. *Id.* at 15-16.

### B. Undisputed Facts

Although the parties dispute certain facts, the following facts are undisputed for the purposes of Defendants' partial summary judgment motion as to four *Hughes* Plaintiffs. *See* Dkt. 56-1 at 3-15; Dkt. 63 at 3-17.

The *Hughes* Plaintiffs subject to summary judgment are LPs who worked at NVRM: Hughes, McCauley, and Thomas worked at NVRM's Greenville, South Carolina branch, and Martinez worked at NVRM's Beltsville, Maryland branch. Dkt. 56-1 ¶¶ 3-4; Dkt. 63 ¶¶ 3-4. As LPs, Plaintiffs "supported the sale of mortgages" by collecting information and documents and submitting the documents for approval. Dkt. 56-1 ¶ 7; Dkt. 63 ¶ 7. Plaintiffs were non-exempt, overtime-eligible employees. Dkt. 56-1 ¶ 8; Dkt. 63 ¶ 8.

Defendants instituted a written "Wage Payment Policy" that each Plaintiff received. Dkt. 56-1 ¶¶ 10, 16; Dkt. 63 ¶¶ 10, 16. The written policy requires non-exempt employees to record all hours worked each day. Dkt. 56-1 ¶ 10; Dkt. 63 ¶ 10. This includes all time worked outside of business hours. Dkt. 56-1 ¶ 11; Dkt. 63 ¶ 11. The written Wage Payment Policy also requires employees to seek approval before working overtime but provides that employees will be paid overtime even if it is not approved in advance. Dkt. 56-1 ¶ 12; Dkt. 63 ¶ 12. When overtime is

requested, Defendants' managers are supposed to determine whether the work can be accomplished without overtime.  Dkt. 56-1 ¶ 13; Dkt. 63 ¶ 13.[2]

Defendants also have other policies pertaining to overtime.  They have a written Standards of Business Conduct policy, which requires Plaintiffs to report the actual hours they have worked. Dkt. 56-1 ¶ 17; Dkt. 63 ¶ 17.  Each Plaintiff received that policy.  Dkt. 56-1 ¶ 18; Dkt. 63 ¶ 18. Defendants also conducted a mandatory training in May 2020 that Hughes, Martinez, and McCauley attended.  Dkt. 56-1 ¶¶ 20, 22; Dkt. 63 ¶¶ 20, 22.  That training indicated that employees had to report all hours worked, but that if overtime was worked without approval, it would be reported and paid.  Dkt. 56-1 ¶ 21; Dkt. 63 ¶ 21.  Hughes, Martinez, McCauley, and Thomas did not ask HR any questions about the Wage Payment Policy or overtime policy.  Dkt. 56-1 ¶ 39; Dkt. 63 ¶ 39.  They also did not report a violation of NVRM's Wage Payment Policy or Standards of Business Conduct during their employment.  Dkt. 56-1 ¶ 41; Dkt. 63 ¶ 41.

Plaintiffs recorded their own hours, and managers approved those hours.  Dkt. 56-1 ¶ 27; Dkt. 63 ¶ 27.  Plaintiffs were paid for all time they recorded in the system, whether overtime or not.  Dkt. 56-1 ¶ 29; Dkt. 63 ¶ 29.  Plaintiffs' unpaid overtime claims are entirely based on purported overtime Plaintiffs worked but did not record.  Dkt. 56-1 ¶ 30; Dkt. 63 ¶ 30.  Before COVID-19, Plaintiffs were expected to perform most of their work from the office; during the height of the COVID-19 pandemic, Defendants closed their offices and Plaintiffs began working from home.  Dkt. 56-1 ¶¶ 32-33; Dkt. 63 ¶¶ 32-33.  However, the same written scheduling and timekeeping practices applied.  Dkt. 56-1 ¶ 33; Dkt. 63 ¶ 33.

---

[2] Plaintiffs claim that they dispute this statement of fact, saying that they are "without sufficient discovery or information to admit or dispute otherwise."  Dkt. 63 ¶ 13.  However, Plaintiffs have not filed a Rule 56(d) affidavit or declaration identifying "any specific information that would create a genuine dispute of material fact."  *Hodgin v. UTC Fire & Sec. Americas Corp., Inc.*, 885 F.3d 243, 250 (4th Cir. 2018).

**Plaintiff Hughes.**  Hughes never recorded overtime during his time at NVRM.  Dkt. 56-1 ¶ 44; Dkt. 63 ¶ 44.  Hughes discussed working overtime with his manager, and in response she suggested he "flex" his schedule.  Dkt. 56-1 ¶ 45; Dkt. 63 ¶ 45.  "Flexing" involves working more than eight hours in one day, but less than eight hours in another day to ensure that only 40 hours are worked during a workweek.  Dkt. 56-1 ¶ 15; Dkt. 63 ¶ 15.  Despite his manager's suggestion, Hughes did not flex his schedule, and instead recorded eight hours each day. Dkt. 56-1 ¶ 46; Dkt. 63 ¶ 46.  Hughes himself does not know whether managers knew he was working off-the-clock. Dkt. 56-1 ¶ 49; Dkt. 63 ¶ 49.[3]  On occasion, Hughes would exchange after-hours text messages with his manager.  Dkt. 56-1 ¶ 50; Dkt. 63 ¶ 50.

**Plaintiff McCauley.**  McCauley never sought approval from any manager to work overtime.  Dkt. 56-1 ¶ 51; Dkt. 63 ¶ 51.  He also never recorded overtime.  Dkt. 56-1 ¶ 51; Dkt. 63 ¶ 51.  Sometimes, McCauley would arrive before his scheduled shift, or leave after his scheduled shift.  Dkt. 56-1 ¶ 52; Dkt. 63 ¶ 52.  McCauley would also sometimes work through his lunch break but did not inform his managers verbally or in writing that he was doing so.  Dkt. 56-1 ¶ 53; Dkt. 63 ¶ 53.  On occasion, he communicated with supervisors outside of his scheduled working hours.  Dkt. 56-1 ¶ 55; Dkt. 63 ¶ 55.

**Plaintiff Martinez.**  Martinez requested approval to work overtime seventeen times, and on each of those occasions, the requests she submitted were approved.  Dkt. 56-1 ¶ 57; Dkt. 63 ¶ 57.  Martinez also received two emails from Senior Vice President of Human Resources, Gary Brown, reminding her of the Wage Payment Policy—one in 2018 and one in 2020.  Dkt. 56-1

---

[3] While Plaintiffs frame this as a "dispute," their response is not that Hughes himself *knew* that managers were aware he was working off-the-clock.  Rather, Plaintiffs point to the fact that managers *could* have known he was working off the clock due to where they sit.  But they do not dispute that Hughes himself does not know whether his managers had knowledge that he was working off-the-clock.

¶¶ 23-25; Dkt. 63 ¶¶ 23-25.  Martinez eventually stopped seeking preapproval of overtime.  Dkt. 56-1 ¶ 58; Dkt. 63 ¶ 58.  On occasion, Martinez would communicate with her managers outside of working hours.  Dkt. 56-1 ¶ 59; Dkt. 63 ¶ 59.  None of those communications indicated that she had to immediately respond.[4]  Dkt. 56-1 ¶ 59; Dkt. 63 ¶ 59.  At no point did management directly tell Martinez not to record after-hours time.  Dkt. 56-1 ¶ 60; Dkt. 63 ¶ 60.

**Plaintiff Thomas.**  Thomas never requested preapproval to work overtime and never recorded it.  Dkt. 56-1 ¶ 61; Dkt. 63 ¶ 61.  Thomas never told her managers that she had worked more than 40 hours.  Dkt. 56-1 ¶ 62; Dkt. 63 ¶ 62.  On occasion, Thomas would communicate with her supervisors after hours.  Dkt. 56-1 ¶ 66; Dkt. 63 ¶ 66.

C. Procedural Background

Joel Hughes filed this complaint on September 3, 2021, on behalf of himself and all other similarly situated LPs.  Dkt. 1.  On January 18, 2022, the parties jointly moved to consolidate the *Hughes* case with the *Jenkins* case (No. 1:21-cv-1381), which was filed by Lori Jenkins on behalf of herself and all other similarly situated LOs, for discovery and pretrial purposes.  Dkt. 36.  The Court granted that motion on January 19, 2022.  Dkt. 37.

Plaintiffs filed their Motion for Conditional Certification (Dkt. 46) on February 11, 2022.  Defendants responded on February 25, 2022 (Dkt. 58) and filed a Partial Motion for Summary Judgment as to four *Hughes* Plaintiffs (Dkt. 56) on the same day.  Plaintiffs filed a reply in support of their Motion for Conditional Certification on March 3, 2022 (Dkt. 61) and responded to Defendants' Partial Summary Judgment Motion on March 9, 2022 (Dkt. 63).  Defendants filed a reply brief in support of their partial summary judgment motion on March 15, 2022 (Dkt. 64).

---

[4] Plaintiffs frame this as a disputed fact.  However, they point to Martinez's understanding, not the communications themselves.  They do not appear to dispute that the communications Martinez received did not ask for an immediate response.

Defendants later sought leave to file a supplemental opposition to Plaintiffs' Motion for Conditional Certification on May 13, 2022 (Dkt. 66).  Plaintiffs filed their opposition to that Motion on May 20, 2022 (Dkt. 70).

## II.  PLAINTIFFS' CONDITIONAL CERTIFICATION MOTION

### A. Standard of Review

In the Fourth Circuit, district courts follow a two-step process for certifying an FLSA class action.  In the first step, the court decides whether to conditionally certify the class and provide notice to potential class members.  *Winks v. Va. Dep't of Transp.*, No. 3:20-cv-420-HEH, 2021 WL 2482680, at *2 (E.D. Va. June 17, 2021).  In the second step, the court determines whether the class should be de-certified based on the discovery that has been undertaken.  *Id.*  While Defendants urge the Court to reject this two-step process and instead follow the Fifth Circuit's process as set forth in *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), this Court will instead abide by the two-step process, as myriad courts in the Fourth Circuit have.  *See, e.g.*, *Chapman*, 2022 WL 368477, at *3 (using the two-step procedure); *Thomas v. Maximus*, No. 3:21-cv-498, 2022 WL 1482010, at *3-*4 (E.D. Va. May 10, 2022) (declining the invitation to follow the *Swales* procedure); *Winks*, 2021 WL 2482680, at *2 n.3 (same); *Santos v. E&R Servs., Inc.*, No. DLB-20-2737, 2021 WL 6073039, at *3-*4 (D. Md. Dec. 23, 2021) (same); *Ison v. MarkWest Energy Partners, LP*, No. 3:21-333, 2021 WL 5989084, at *3 (S.D. W. Va. Dec. 17, 2021) (same).

Under the two-step process, the Court first decides whether Plaintiffs have made a sufficient factual showing that certification is warranted.  Defendants maintain that a higher standard should be used under the two-step procedure because "extensive discovery" had been conducted at the time the motion was filed.  Dkt. 58 at 13.  However, the "majority of courts within

the Fourth Circuit have declined to impose" a heightened standard, even if some discovery has been conducted. *McNeil v. Faneuil, Inc.*, No. 4:15-cv-81, 2016 WL 11673838, at *4 (E.D. Va. Aug. 3, 2016) (collecting cases); *see also Chapman*, 2022 WL 368477, at *4 (declining defendant's request for a heightened standard even though some discovery had been conducted). Nevertheless, "[P]laintiffs' burden [at this stage] is 'not invisible.'" *Smith v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2021 WL 6881062, at *6 (E.D. Va. Dec. 21, 2021) (quoting *Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 548 (E.D. Va. 2009)) *report and recommendation adopted*, No. 2:21-cv-194, 2022 WL 407378 (E.D. Va. Feb. 9, 2022). They must set forth "more than vague allegations with meager factual support regarding a common policy to violate the FLSA." *Id.* (cleaned up).

Ultimately, the Court retains discretion to decide whether to conditionally certify Plaintiffs' proposed collective action. *Edwards v. Optima Health Plan*, No. 2:20-cv-192, 2021 WL 1174724, at *3 (E.D. Va. Mar. 29, 2021). In doing so, the Court "need not engage in resolving factual disputes, decide substantive issues going to the merits of the case, or make credibility determinations . . . ." *McNeil*, 2016 WL 11673838, at *3 (cleaned up). What matters is whether Plaintiffs have submitted evidence "establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exists." *Sharer v. Tandberg, Inc.*, No. 1:06-cv-626, 2006 WL 2988104, at *2 (E.D. Va. Oct. 17, 2006) (cleaned up).

### B.  Analysis

Plaintiffs seek conditional certification of two FLSA collectives: an LP and an LO class. According to Plaintiffs, the facts they present show that they meet their burden of showing "similarly situated" Plaintiffs, meaning that conditional certification is warranted. Specifically, they contend that the facts show that both the LP and LO Plaintiffs are subject to a common,

unlawful, *de facto* policy that results in them working unpaid overtime.  They also claim that the Court should authorize notice to potential plaintiffs.

Defendants disagree.  They believe that under any standard, Plaintiffs' motion is insufficient to establish that there are "similarly situated" Plaintiffs.  They also argue that the Court should first resolve Defendants' pending partial motion for summary judgment.

To meet their burden, Plaintiffs must show that potential Plaintiffs are "similarly situated." *Winks*, 2021 WL 2482680, at *2.  The "primary focus . . . is on legal issues[,]" and "plaintiffs' and prospective class members' circumstances do not need to be factually identical." *Edwards*, 2021 WL 1174724 at *4.  In the Fourth Circuit, to show that they are similarly situated, Plaintiffs "must demonstrate that 'they and potential plaintiffs were victims of a common plan or policy' that violated the FLSA." *Yerby v. City of Richmond, Va.*, No. 3:19-cv-393, 2020 WL 602268, at *3 (E.D. Va. Feb. 7, 2020) (quoting *Meeker v. Med. Transp., LLC*, No. 2:14-cv-426, 2015 WL 1518919, at *3 (E.D. Va. April 1, 2015)).

Here, Plaintiffs do not claim that they were subject to a written policy that deprived them of overtime benefits.  Rather, they claim that despite Defendants' written policies, Defendants had a *de facto*, unwritten policy that disregarded the written policy and resulted "in off-the-clock uncompensated overtime worked, in violation of the FLSA." Dkt. 61 at 9.  As a result, the inquiry at this stage is whether Plaintiffs have shown there was a "unwritten polic[y], consistently applied[,]" that resulted in overtime work. *Chapman*, 2022 WL 3686477, at *5.

Plaintiffs point to the conditional certification of a similar, Florida-only class in the *Cossaboom* litigation as significant evidence that a class should be conditionally certified here. *See Cossaboom v. NVR, Inc.*, No. 9:21-cv-80627-AMC, Dkt. 94 (S.D. Fla. Feb. 1, 2022).  But the standard that courts in the Eleventh Circuit (and its historical predecessor, the Fifth Circuit) apply

is different.  To show that a class is "similarly situated" for FLSA purposes, plaintiffs in the Eleventh Circuit must "show that the employees are similarly situated with respect to their job requirements and pay provisions." *Id.* at 8 (cleaned up).  And the *Cossaboom* Court did just that— it analyzed whether Plaintiffs have provided a "reasonable basis" to believe that the employees were "similarly situated" as to their pay provisions and job requirements. *See id.* at 7-10.  That is not what the Court examines here.  In the Fourth Circuit, what matters is whether Plaintiffs have offered evidence that NVR had "unwritten policies, consistently applied[,]" resulting in unpaid overtime. *Chapman*, 2022 WL 3686477, at *5.  Put differently, what the Court is considering is whether employees were similarly situated as it relates to unwritten overtime policies; what the *Cossaboom* court examined was whether the plaintiffs were similarly situated as it relates to the nature of their jobs.[5]

Plaintiffs' own allegations reveal that all potential class members are not similarly situated. The LP Plaintiffs' suit exemplifies this, as none of their declarations, interrogatories, or depositions evidence a consistent application of an unwritten policy.  The LP Plaintiffs claim that the "performance demands" on employees require work outside of the 40-hour workweek, highlighting that they received technology to work from home and that they sometimes received

_____

[5] Plaintiffs seem to intimate that it is enough in the Fourth Circuit to show that the employees performed the same job duties to conditionally certify a class. Dkt. 47 at 21-22.  They point to *Yerby*, 2020 WL 602268; *Allen v. Cogent Commc'ns*, No. 1:14-cv-459, 2014 WL 4270077 (E.D. Va. Aug. 28, 2018); *Lafleur v. Dollar Tree Stores*, No. 2:12-cv-363, 2012 WL 4739534 (E.D. Va. Oct. 2, 2012); and *Houston v. URS Corp.*, 591 F. Supp. 2d 827 (E.D. Va. 2008) as support.  However, in each of those cases, the court found that the plaintiffs were subject to a "common policy or plan" in finding that they were similarly situated. *See Yerby*, 2020 WL 602268, at *3 (noting that at the conditional certification stage, "plaintiffs must demonstrate that they and potential plaintiffs together were victims of a common plan or policy" (cleaned up)); *Allen*, 2014 WL 4270077, at *5 (noting that each plaintiff was paid under the same compensation plan); *LaFleur*, 2012 WL 4739534 at *10-*11 (analyzing whether plaintiffs were subject to a common policy or plan); *Houston*, 591 F. Supp. 2d at 833 (finding that plaintiffs had shown that defendants had "adopted uniform policies and practices").

communications from their managers after hours.  Dkt. 47 at 10-11 and accompanying notes; *see also* Dkt. 48-4 ¶¶ 8-10 (Hughes); Dkt. 48-7 at 1 (Martinez); Dkt. 48-9 at 1 (McCauley); Dkt. 48-11 at 1 (Sechuk); Dkt. 48-13 at 1 (Thomas).  But Plaintiffs present no evidence that the performance demands are the product of "keeping with company polic[y][.]"  *Hargrove v. Ryla Teleservs., Inc.*, No. 2:11-cv-344, 2012 WL 489216, at *8 (E.D. Va. Jan. 13, 2012), *report and recommendation adopted*, No. 2:11-cv-344, 2012 WL 463442 (E.D. Va. Feb. 13, 2012).  For example, they do not allege that Defendants had a policy that *required* them to be at work for eight hours a day and *also* work after-hours.  *Cf. Maximus*, 2022 WL 1482010, at *5 (conditionally certifying class because Plaintiffs submitted declarations about a uniform policy that required them to get call-ready before they clocked in and also required them to work during meal breaks).  Indeed, the named Plaintiffs acknowledge that they can "flex" their work schedules and work less hours on certain days if they have worked more on earlier days.  *See, e.g.*, Dkt. 48-3 at 126:13-127:9 (Hughes).  Furthermore, Plaintiffs admit that when their managers communicated with them after-hours, they did not require an immediate response and sometimes even said that Plaintiffs did not need to immediately respond.  *See, e.g.*, Dkt 48-4 at Exs. A-B (Hughes); Dkt. 48-6 at 107:5-10 (Martinez); Dkt. 48-12 at 104:3-105:1 (Thomas).

The only policy that Plaintiffs theoretically identify is that Defendants require preapproval for overtime, yet rarely grant it when requested and led employees to believe that they would be disciplined for recording non-approved overtime.  Dkt. 47 at 12-13.  As an initial matter, it is unclear what that "policy" would be: Plaintiffs do not explicitly claim that Defendants have a policy of denying credible overtime requests or disciplining employees who submit unapproved requests.  Their claim is premised on *Plaintiffs*' own belief.  In any event, any assertion that there is a common policy related to Defendants' denial of overtime requests—whether approved or

unapproved—would collapse under its own weight.  Only one named loan-processor Plaintiff asserts that she was not allowed to record overtime.  *See* Dkt. 48-10 at 84:22-85:4 (Sechuk). Another—Martinez—sought and received pre-approval for overtime.  *See, e.g.*, Dkt. 48-6 at 42:8-18.  The others did not seek overtime or notify anyone that they were working overtime that they were not recording.  *See, e.g.*, Dkt. 48-3 at 112:16-24 (Hughes); Dkt. 48-8 at 99:16-20 (McCauley); Dkt 48-12 at 44:2-6 (Thomas).  Those "material inconsistencies" among Plaintiffs' assertions belie the presence of a common, consistently applied policy.  *Chapman*, 2022 WL 3686477, at *5.  At most, Plaintiffs' varied experiences are the product of "happenstance or outlier behavior" from managers, not a uniformly applied policy.  *McNeil*, 2016 WL 11673836, at *3.

The LO Plaintiffs present similarly deficient evidence.  Like the LP Plaintiffs, all of those Plaintiffs point to the "performance demands" associated with their job.  Dkt. 48-19 ¶ 12 (Jenkins); Dkt. 48-20 ¶ 12 (Christenson); Dkt. 48-21 ¶ 11 (Desmond); Dkt. 48-22 ¶ 11 (Galan); Dkt. 48-23 ¶ 11 (Gardner); Dkt 48-24 ¶ 12 (Tapscott).  But there is no evidence that those demands are a part of company policy.  And their allegations about the pre-approval of overtime are too disparate to establish a consistently applied policy.  *Compare, e.g.*, Dkt. 48-19 ¶ 14 (Jenkins stating that her supervisor told her not to record overtime hours because they would not be paid) *with* Dkt. 48-20 (no allegation from Christenson that she was told not to record unapproved overtime) *and* Dkt. 48-22 ¶ 12 (Galan admitting that she did submit overtime that was approved) *and* Dkt 48-24 ¶ 13 (Tapscott acknowledging that overtime could be pre-approved).

Even if Plaintiffs could have shown that they were similarly situated, the Court would deny Plaintiffs' motion for conditional certification because of the "[n]ecessity of [i]ndividualized determinations" in this case.  *Purdham*, 629 F. Supp. 2d at 549; *see also MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-3088, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011) ("If individualized

determinations are likely to predominate, collective action will hinder, rather than promote efficient case management, and thus notice should not be granted."). Plaintiffs' claims turn on their individual interactions with their supervisors, both inside and outside of work. *See Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 688 (D. Md. 2010) (denying motion for conditional certification because adjudication would require "individualized factual inquiries" into plaintiffs' interactions with their managers, among other things). Those interactions substantially differ, both in quantity and in form, and the fact-finder's credibility determinations as to each individual Plaintiff and manager would be significant. The "salient facts[,]" as currently presented by Plaintiffs, suggest that the case "is not a suitable vehicle for a collective action." *Purdham*, 629 F. Supp. 2d at 552. Accordingly, conditional certification is inappropriate. *See Smithfield Foods*, 2021 WL 6881062, at *13-*15 (denying motion to conditionally certify class).

Plaintiffs' evidence does not establish that either the LPs or the LOs were subject to a "common plan or policy" that make them "similarly situated." *Yerby*, 2020 WL 602268, at *3. Moreover, the individualized nature of each of Plaintiffs' claims indicates to the Court that this is not an action that is appropriate for collective disposition. Accordingly, Plaintiffs' Motion for Conditional Certification (Dkt. 46) is DENIED. Defendants' Motion for Leave to File a Supplemental Response to Plaintiffs' Motion for Conditional Certification (Dkt. 66) is also DENIED as moot.

III.  DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO FOUR *HUGHES* PLAINTIFFS

A.  Standard of Review

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'" *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a Court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Plaintiffs are the non-moving party and all reasonable inferences are accordingly drawn in their favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). This is a "fundamental principle" that guides a Court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson*, 477 U.S. at 247-48.  And a "material fact" is one that might affect the outcome of a party's case.  *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

B.  Analysis

Defendants move for summary judgment as to four of the LP Plaintiffs: Hughes, Martinez, McCauley, and Thomas.  They first argue that the evidence shows that NVRM did not permit unrecorded overtime work.  In doing so, Defendants point to their written policies and procedures about overtime, claiming that they extensively trained their employees about them.  They also assert that there is no dispute that Defendants had no knowledge—actual or constructive—about off-the-clock work.  Second, they argue that Plaintiffs cannot prove the extent of their alleged overtime work.  According to Defendants, any figure would be pure speculation.

In response, Plaintiffs argue that there is a genuine issue of fact as to actual or constructive knowledge.  They argue that there is substantial evidence from employees reflecting a culture that encourages only recording 40 hours of work, not granting pre-approval, and having performance standards that require overtime work.  They also claim that Defendants were on notice of off-the-clock work due to their interactions with Plaintiffs.  Finally, Plaintiffs maintain that they have provided sufficient evidence of overtime hours worked to defeat summary judgment.

To survive summary judgment, Plaintiffs must show that there is a genuine dispute of material fact about (1) whether they worked overtime hours without compensation; (2) the amount

and extent of the work as a matter of just and reasonable inference; and (3) whether Defendants knew of the uncompensated overtime. *Talton v. I.H. Caffey Distrib., Co.*, 124 F. App'x 760, 763 (4th Cir. 2005).[6] They must also show that there is no genuine dispute of material fact that Defendants engaged in interstate commerce, *id.* at 763-64, but Defendants do not appear to contest that they did so.

To be liable under the FLSA, Defendants must have "knowledge, either actual or constructive, of [the] overtime work." *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). As a result, to prevail on summary judgment, Defendants must show that there is no genuine dispute of material fact that they did not have knowledge, actual or constructive, that each Plaintiff was working unrecorded overtime hours. *Bailey v. Cty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996). An employer has "constructive knowledge" of unpaid overtime "if it should have acquired knowledge of that work through reasonable diligence." *Richardson v. Alliance Residential Co.*, No. ELH-18-1114, 2020 WL 551316, at *9 (D. Md. Feb. 4, 2020) (cleaned up).

In arguing that they did not have actual or constructive knowledge of the overtime dispute, Defendants point to the fact that they have lawful written policies about overtime pre-approval, and that they trained the employees and their managers on how to comply with those policies. But this argument is of no moment. This Circuit's prevailing authority deems such considerations legally irrelevant in the FLSA inquiry; instead, courts must examine whether the employer had actual or constructive knowledge. *See Gonzalez v. McNeil Techs., Inc.*, 2007 WL 1097887, at *6 (E.D. Va. April 11, 2007) (rejecting Defendants' argument that they had a "clear policy" requiring employees to report all hours worked because the court found that defendants had constructive

---

[6] Both parties appear to combine the first and second elements, and so the Court will address them simultaneously.

knowledge); *see also Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 804-05 (D. Md. 2014) (holding that an FLSA plaintiff does not need to establish compliance with her company's reporting requirements if she can prove knowledge); *Smith v. ABC Training Ctr. of Md., Inc.*, No JFM-13-306, 2013 WL 3984630, at *9 (D. Md. Aug. 1, 2013) (same). Thus, the critical inquiry as to this element is whether there is a genuine dispute of material fact about whether Defendants had actual or constructive knowledge that each of the Plaintiffs was working overtime.

**Hughes.** There is a genuine dispute of material fact about whether Defendants had constructive or actual knowledge that Hughes worked overtime. When Hughes discussed working overtime with his manager, she responded that he should flex his schedule. Dkt. 56-1 ¶ 45; Dkt. 63 ¶ 45. However, Hughes did not flex his schedule—he logged eight hours each day. Dkt. 63-2. Hughes also testified that he approached his manager "on multiple occasions[,]" and asked whether he could use overtime to handle his workload. Dkt. 56-2 at 130:13-131:5. Another loan processor also asked Hughes's manager about overtime given the workload LPs faced. Dkt. 63-5 at 134:20-135:6.

Drawing reasonable inferences in Plaintiffs' favor, Hughes and others' conversations with his manager indicate that she was aware that LPs believed that their work could not be accomplished within 40 hours. Defendants have presented no evidence as to what Hughes's manager knew (or did not know) about his workload. Furthermore, they have presented no evidence about what "diligence" Hughes's manager undertook to find out how much time Hughes and other LPs were spending on their work. For example, according to Hughes, his manager knew that Hughes wanted to avoid working long hours and she thought that flexing his hours was a potential solution. But Hughes did not flex his hours, Dkt. 63-2, and his manager would have been aware of that since she approved his hours, Dkt. 56-1 ¶ 27; Dkt. 63 ¶ 27. There is no evidence in

the record about what his manager did to determine whether Hughes was managing his workload without flexing or whether he was continuing to work long hours on particular days in addition to logging eight hours on the other work days.  This creates a genuine dispute of a material fact about whether Defendants "should have known" that Hughes was working overtime.

Moreover, while it is undisputed that Hughes *himself* does not know whether his managers were aware he worked overtime hours, Dkt. 56-1 ¶ 49; Dkt. 63 ¶ 49, that does not settle the question of whether his managers actually knew that he was working overtime.  Hughes testified that his managers saw him working through lunch and after hours in the office, and that he would communicate with his managers when he was at home.  Dkt. 63-5 at 85:2-86:25, 154:2-18, 167:21-168:24.  Defendants have presented no evidence that the managers, knowing this information, were nevertheless unaware he was working overtime.  And even if they were actually unaware he was working overtime, there is a genuine dispute as to whether they exercised "reasonable diligence" and should have known Hughes was working overtime, given their apparent knowledge of his after-hours and off-hours work.

**McCauley.**  There is also a genuine dispute of material fact about whether Defendants had constructive or actual knowledge of whether McCauley worked overtime.   Like Hughes, McCauley testified that his managers could have been aware of his after-hours and off-hours work. He sometimes came into work before he was scheduled to at 8 a.m., and "typically" left after he was scheduled to at 4:30 p.m, which his managers would have seen "most of the time."  Dkt. 63-6 at 119:23-120:21.  His managers may have also observed him working through lunch.  *Id.* at 98:14-17, 166:4-10.  Based on those facts, it is reasonable to infer that it was apparent to those who saw or communicated with McCauley at work that he was working more than eight hours each workday.  As with Hughes, Defendants have presented no facts from McCauley's managers

that they did not know, based on their interactions with McCauley, that he was working overtime. There is also nothing in the record to establish that his managers conducted "reasonable diligence." Indeed, Plaintiffs suggest that McCauley's managers did nothing, and Defendants present no facts in response.

It bears noting that Defendants claim that it is undisputed that McCauley was instructed to record hours spent on after-hours communications. Dkt. 56-1 ¶ 56. Plaintiffs disagree. Dkt. 63 ¶ 56. Even accepting that particular fact as undisputed, it is in tension with McCauley's testimony that his manager told him to record eight hours regardless of how many hours he worked. Dkt 63-6 at 151:22-152:18. Deciding which is true is a credibility determination that is inappropriate at the summary judgment stage. *Anderson*, 477 U.S. at 255.

**Martinez.** There is also a genuine dispute of material fact as to whether Defendants knew or should have known that Plaintiff Martinez was working overtime without compensation. It is undisputed that Martinez requested overtime approval on "approximately seventeen occasions[,]" and then stopped doing so. Dkt. 56-1 ¶¶ 57-58; Dkt. 63 ¶¶ 57-58. Defendants claim that this fact supports their motion; in reality, it undercuts it. Management knew that Martinez needed overtime to do her job for some time and that she eventually stopped requesting it. Dkt. 63-7 at 114:15-115:9. Defendants present no evidence that they conducted "reasonable diligence" to determine why Martinez no longer was requesting overtime. Indeed, without any facts suggesting otherwise, it is reasonable to infer that Defendants may have had *actual* knowledge that Martinez was working overtime uncompensated. There is nothing in the record to indicate that Martinez's workload decreased, efficiency increased, or that she needed to spend less time at work for any reason.

**Thomas.** There is also a genuine dispute of material fact as to whether Defendants knew or should have known that Thomas was working overtime without compensation. Like Hughes

and McCauley, Defendants may have known that Thomas was working at times when she was supposed to be off-the-clock. *See, e.g.*, Dkt. 56-12 at 173:7-12. Again, while Thomas herself does not know whether her managers actually knew that her off-the-clock work resulted in unpaid overtime, that does not mean there is no dispute as to the managers' knowledge. Thomas was "sure they knew" she was working overtime because of their interactions throughout the workday. Dkt 63-9 at 120:4-10. Defendants do not offer any affirmative testimony about the managers' knowledge and appear to merely dispute whether they should have known that Thomas was working off-the-clock. Accordingly, there is a genuine dispute as to the manager's knowledge, which is a material fact.

Other facts also show that there are genuine disputes related to Defendants' knowledge as it relates to all Plaintiffs. Defendants emphasize the fact that none of the Plaintiffs ever recorded unapproved overtime. Dkt. 56 ¶ 36. However, Alexis Williams, one of the managers, testified that she knew that most employees were *pro forma* recording time as eight hours worked each day, regardless of whether they flexed their days. *See* Dkt 63-10 at 143:13-144:9. As such, Defendants knew that timesheets were not accurate vis-à-vis employees' flex time, so it is reasonable to infer that they knew (or should have known) that they were not accurate as it pertains to overtime, as well. Plaintiffs also claim that the "performance demands" of the job required each of them to work more than 40 hours, *see, e.g.*, Dkt. 63-25 at 1; Dkt 63-26 at 1; Dkt 63-27 at 1; Dkt 63-29 at 1, which Defendants dispute, Dkt. 56-1 ¶ 9. Without knowing whether the demands of the jobs can be met in 40 hours or not, it is difficult to examine whether Defendants "should have known" that the job resulted in overtime for LPs. The requirements of the job are another genuine dispute of material fact related to Defendants' knowledge.

To defeat summary judgment, Plaintiffs must also be able demonstrate "the amount and extent of improperly compensated work as a matter of just and reasonable inference." *Pforr*, 851 F.2d at 108 (cleaned up).  This "does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty." *Id.* at 108.  If a jury, "viewing the evidence in [Plaintiffs'] favor, could reasonably infer that [they] routinely worked at least some overtime hours during [their] employment[,]" summary judgment is inappropriate. *Castillo v. Joann Urquhart, M.D., P.C.*, 855 F. App'x 877, 880 (4th Cir. 2021).

Plaintiffs can establish the amount of their off-the-clock work as matter of just and reasonable inference.  Defendants argue that Hughes has given inconsistent statements about the amount of overtime work he performed when he was employed at NVR.  Dkt. 56-1 at 27. However, those inconsistent statements go to credibility, which the Court does not evaluate at this stage. *Castillo*, 855 F. App'x at 880.  What matters is if, viewing the evidence in Plaintiffs' favor, a jury could reasonably infer that Hughes worked "at least some" overtime. *Id.*  Hughes states that, through the course of his employment, he likely worked between 45 and 47 hours per week. Dkt. 63-21 ¶ 6.  That is combined with his testimony about his uncompensated off-the-clock work. *See, e.g.*, Dkt. 63-5 at 129:9-130:2 (Hughes testifying that he would sometimes stay late one day and return on time the next day); *id.* at 151:13-19 (Hughes testifying that he would sometimes work through lunch and after his scheduled 4:30 p.m. departure).  The veracity of Hughes's statements is not for the Court to resolve at this stage; however, a reasonable jury could infer that Hughes worked an uncompensated overtime amount based on that evidence.

The same is true of Martinez, McCauley, and Thomas.  Each Plaintiff provides sufficient testimony such that a jury could infer that the Plaintiff worked some uncompensated overtime. *See, e.g.*, Dkt. 63-7 at 76:24-77:24 (Martinez testifying that she would arrive at work at 8:30 a.m.

and leave at 5:30 p.m. on most days, even though she was scheduled to work eight hours a day); Dkt. 63-6 at 119:23-120:21 (McCauley testifying that even though his schedule was 8:00 a.m. to 4:30 p.m., he would usually be in the office from 7:30 a.m. until 5:00 p.m., depending on the day); Dkt. 63-9 at 170: 9-17 (Thomas testifying that she often worked through lunch).  Although their calculations are not exact and subject to some skepticism, the Court need not (and should not) resolve those credibility determinations at the summary judgment stage.

Because Defendants have not shown that there is no genuine dispute of material fact as to their knowledge or the extent of Plaintiffs' overtime damages, they are not entitled to judgment as a matter of law.

## IV.   CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Plaintiffs' Motion for Conditional Certification (Dkt. 46) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion for leave to file a Supplemental Opposition to Motion for Conditional Certification (Dkt. 66) is DENIED as MOOT; and it is

FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment as to Four *Hughes* Plaintiffs (Dkt. 56) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
September 30, 2022

_____ /s/
Rossie D. Alston, Jr.
United States District Judge