IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOEL HUGHES, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:21-cv-1018 (RDA/IDD) |
| NVR, INC., *et al.*, ) ) | |
| Defendants, ) ) | |
| LORI JENKINS, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 1:21-cv-1381 (RDA/JFA) |
| NVR, INC., *et al.*, ) ) | |
| Defendants. ) ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants NVR, Inc. ("NVR") and NVR Mortgage Finance, Inc.'s ("NVRM" and together with NVR, "Defendants") Motion for Separate Trials (Dkt. 125).[1] This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Having considered the Motion, Defendants' Memorandum in Support (Dkt. 128),

---

[1] On March 13, 2023, this Court denied Defendants' Motion for Separate Trials without prejudice, Dkt. 151, because the parties had indicated they had reached a settlement, Dkt. 148. Defendants later asked the Court to reinstate to this Motion (among others) because the parties were unable to finalize the settlement agreement. Dkt. 157. Plaintiffs did the same. Dkt. 163. The Court finds it proper to reinstate the Motion for Separate Trials and will address the other motions at the status conference scheduled for May 18, 2023.

Plaintiffs' Opposition (Dkt. 135), and Defendants' Reply in Support of their Motion (Dkt. 142), this Court GRANTS Defendants' Motion for Separate Trials.

## I. BACKGROUND

These cases involve lawsuits from ten of Defendants' current or former employees. Five of those Plaintiffs—the *Hughes* Plaintiffs—were employed by Defendants as "Loan Processors." Dkt. 126 at 3. The other five Plaintiffs—the *Jenkins* Plaintiffs—were employed by Defendants as "Loan Officers." *Id.*

While Loan Processors and Loan Officers both work for NVR, they have somewhat different responsibilities. Loan Officers "guide new home purchasers through the loan process from loan application to loan approval and settlement." Dkt. 135-2 (Loan Officer Job Description). They do so by, *inter alia*, "prequalify[ing] prospective borrowers, review[ing] financing options, and ensur[ing] the compliant origination of loans for NVR home purchasers." *Id.* On the other hand, Loan Processors support the sale of mortgages to customers by collecting and reviewing "all pertinent loan documents as required by" NVR's Underwriting Department. Dkt. 135-3 (Loan Processor Job Description).

The Loan Processors were employed across three states: Maryland, New Jersey, and South Carolina. *Id.* The Loan Officers were also employed across three states: Maryland, Ohio and Virginia. Some of the Loan Processors had the same Managers, Branch Managers, and/or Regional Managers as each other. Dkt. 135 at 6-7, Table 1. Likewise, some of the Loan Officers had the same Managers, Branch Managers, and/pr Regional Managers as each other. *Id.* However, no Loan Officer Plaintiffs had the same Managers, Branch Managers, and/or Regional Managers as any Loan Processor Plaintiffs. *Id.*

Joel Hughes filed his complaint on September 3, 2021, on behalf of himself and all other similarly situated LPs.  Dkt. 1.  On January 18, 2022, the parties jointly moved to consolidate the *Hughes* case with the *Jenkins* case (No. 1:21-cv-1381), which was filed by Lori Jenkins on behalf of herself and all other similarly situated LOs, for discovery and pretrial purposes.  Dkt. 36.  The Court granted that motion on January 19, 2022.  Dkt. 37.

## II.  ANALYSIS

Under Federal Rule of Civil Procedure 42(b), a court may order a separate trial "for convenience, to avoid prejudice, or to expedite and economize."  While the party requesting separate trials bears the burden of showing that separate trials are appropriate under Rule 42(b), under the plain language of the Rule, that party need not show that separate trials would promote convenience, avoid prejudice, *and* expedite and economize the trial; it only needs to show that separate trials would promote one of the criteria of Rule 42(b).  *Am. Sci. and Engineering, Inc. v. Autoclear, LLC*, No. 2:07-cv-415, 2008 WL 11379925, at *1 (E.D. Va. Sep. 22, 2008).  The decision to order separate trials under Rule 42(b) is within the sound discretion of the trial court.  *Hogan v. Fairfax Cnty. Sch. Bd.*, No. 1:08-cv-250, 2008 WL 4924692, at *1 (E.D. Va. Nov. 13, 2008).  In this case, the Court finds that separate trials would serve all three of the Rule 42(b) purposes.

### A. Convenience

Separate trials would promote convenience.  Before the consolidated trial was removed from the docket, it was set for fourteen days.  Plaintiffs identified 30 "Expect to Call" witnesses and 15 "May Call" witnesses, while Defendants identified nine "Expect to Call" witnesses and four "May Call" witnesses.  Dkt. Nos. 130; 133.  While it is unclear what (if any) overlap there is between the witnesses Plaintiffs expect to call in the *Hughes* and the *Jenkins* cases, there is only

3

one witness that Defendants intend to call that overlaps between the two cases. Managing 40-plus potential witnesses is certainly a difficult task, especially in a jury trial that stretches across three weeks where many of the witnesses reside out-of-state. It appears that separating the trials would eliminate some of Defendants' witnesses in each trial, specifically those witnesses who Defendants *only* intend to offer in one case or the other. Similarly, while the extent of the overlap for Plaintiffs' witnesses between the two cases is somewhat unclear, it is apparent that separate trials would allow some witnesses to only be called for one trial and not the other. For example, each of the Loan Processors, along of each of their supervisors, would not be called in the Loan Officer case (and vice-versa). Reducing the amount of witnesses in each individual trial eases various logistical problems with calling dozens of witnesses from across the country who do not have a definite time at which they will testify.

To be sure, Plaintiffs will likely present some common evidence in the two trials. But Rule 42(b) does not instruct courts to hold a single trial if two trials would have some overlapping evidence. Moreover, the extent of overlapping evidence is likely limited. For example, the issue of knowledge will be central: under the relevant legal standard, Plaintiffs must show that Defendants knew that they worked overtime, which they can impute to Defendants if they encouraged artificially low reporting. However, as Plaintiffs acknowledge, that knowledge can only be imputed to the Defendants "when [their] *supervisors or managers* encourage artificially low reporting." Dkt. 135 at 8 (quoting *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015)). And, according to Plaintiffs' own chart, there is no overlap between the *Hughes* and *Jenkins* Plaintiffs' supervisors and managers. It follows that the evidence of knowledge—and the witnesses who would testify about that knowledge—would not overlap between the two trials.

Separate trials would also promote convenience for the parties, the jury, and the Court. Some of the Plaintiffs reside out-of-state and separating the trials would enable the Plaintiffs to travel only to those proceedings which are relevant to their own claims. Similarly, holding separate trials is convenient for the parties, their counsel, the jury, and the Court, as there would be fewer exhibits and witnesses to consider at one time. Two separate trials is also less of a burden on the Court's resources and each separately-empaneled jury's time, as there are not any clear efficiencies that would result from a single trial.

### B. Prejudice

In considering the risk of prejudice, the Court pays particular attention to how the structure of the trial would impact the jury. *See Steves and Sons, Inc. v. JELD-WEN, Inc.*, 252 F. Supp. 3d 537, 549 (E.D. Va. 2017) (in ruling on Rule 42 motion, considering juror confusion in determining that separate trials would alleviate risk of prejudice). The Court must also consider both how a single trial might prejudice either party and how separate trials might prejudice either party. *See Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983) ("[A] trial must remain fair to both parties, and … considerations of convenience may not prevail where the inevitably consequence to another party is harmful and serious prejudice.").

Here, jury confusion is lessened by separate trials. The basic issues in this case are simple: Plaintiffs must prove (1) that they worked uncompensated overtime hours (and the extent to which they worked those hours); and (2) the Defendants suffered or permitted the uncompensated overtime, meaning that they had actual or constructive knowledge of the overtime work. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986). In this case, however, there are *ten* Plaintiffs, each of which have to submit evidence about the uncompensated overtime hours that they worked. And then they must submit more evidence about Defendants' employees knowledge about that

work. Keeping straight the specific amount of overtime work—and Defendants' knowledge (or lack thereof)—for ten employees is difficult for any jury. Moreover, Defendants intend to present an outside sales exemption defense for some Plaintiffs in the *Jenkins* case, which does not apply to any of the *Hughes* plaintiffs. All of those difficulties are compounded by the fact that a single trial would last almost three full weeks. Halving the amount of Plaintiffs, as well as the amount of time at trial, would make it easier for the jury when resolving these highly individualized claims.

Holding two trials also minimizes the risk of prejudice to all parties. There are ten separate individualized inquiries that the jury must make. Empaneling one jury to make all of those assessments increases the risk that the jury might find one supervisor (or one plaintiff) to not be credible and make a generalization about all of the supervisors or plaintiffs as a result. Along those same lines, if Plaintiff's contention that Defendants have a policy of "prohibit[ing] off-the-clock work," Dkt. 135 at 3, is supported by evidence, then there is a risk that the jury might take that policy and render a general verdict in favor of all ten Plaintiffs—regardless of whether the specific elements set forth in *Food Lion* have been met for each individual Plaintiff.

There is no real prejudice in having two trials here. Plaintiffs' only prejudice argument is that they are prejudiced by having to "present the same case twice." *Id.* at 14. But that is no prejudice. There are plenty of situations where parties have to present similar cases multiple times—indeed, that is the entire point of the multidistrict litigation structure that Congress has created. Without any other articulation of specific prejudice that arises from two trials (and the Court being unable to find any prejudice), the Court is satisfied that the prejudice factor weighs in favor of two trials.

### C. Judicial Economy

Finally, separate trials promotes judicial expedition and economy. Generally, "a single trial will be more expedient and efficient." *F&G Scrolling Mouse L.L.C. v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1999). However, in this case, the economies of a single trial are minimal: while there is some overlapping evidence, most of the evidence is highly individualized, meaning that the total amount of trial days is not significantly lessened by a single trial, and Plaintiffs have not offered anything to suggest the contrary. Moreover, the parties will be able to more efficiently and effectively present their evidence at a second trial, having seen what issues are undisputed in the first trial. Finally, there is no risk of inconsistent adjudications here, as the legal issues are straightforward; all that remains is for a jury to make the requisite factual findings for each individual Plaintiff.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that Defendants' Motion for Separate Trials (Dkt. 125) is GRANTED. The Court will address the timing of those trials at the May 18, 2023 Status Conference.

IT IS SO ORDERED.

Alexandria, Virginia
May 10, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge

7